# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| **JEROME MANEY** | ) |
| | ) Case No. 3:25-cv-00347 |
| v. | ) |
| | ) |
| **FRANK BISIGNANO,** *Commissioner of Social Security Administration*[1] | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Jerome Maney filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying him disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 14) and supporting memorandum (Docket No. 15), to which Defendant SSA has responded (Docket No. 18) and Plaintiff has replied (Docket No. 19). The parties have consented to entry of final judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit. (Docket No. 10.)

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 14) is **DENIED**.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Leland Dudek (who served as Acting Commissioner from February 17, 20205 to May 7, 2025) as the defendant.

## I.   INTRODUCTION

On June 17, 2013, Plaintiff proactively filed an application for DIB and SSI. (Transcript of the Administrative Record (Docket No. 12) at 382–91.)[2] In those applications, Plaintiff asserted that, as of the alleged onset date of December 31, 2012, he was disabled and unable to work due to "seizures." (AR 480.) On September 23, 2015, an administrate law judge ("ALJ") found that Plaintiff had been disabled with a severe impairment of "epilepsy/seizure disorder" from the onset date until the date of the decision. (AR 123–28.) Several years later, on October 7, 2019, the SSA determined that Plaintiff's impairments had medically improved and that he was no longer considered disabled. (AR 131–52.) Plaintiff appealed that decision, but an ALJ upheld the determination on March 4, 2022. (AR 159–70.) Plaintiff requested a review of the ALJ's decision, and the Appeals Council remanded the case on April 5, 2023. (AR 178–82.)

On October 23, 2023, Plaintiff appeared with an attorney and testified at a telephone hearing conducted by ALJ Renee Andrews-Turner. (AR 41–72.) On January 2, 2024, the ALJ denied Plaintiff's claims. (AR 7–22.) Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied this request on February 12, 2025 (AR 1–4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

## II.  THE ALJ'S FINDINGS

The ALJ included the following enumerated findings in her January 2, 2024 unfavorable decision:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated September 23, 2015. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairment: epilepsy/seizure disorder. This impairment was found to result in "the residual functional capacity to perform heavy work as defined in 20 CFR 404.1567(a) and 416.967(a) except claimant cannot work near hazards. He needs recurring breaks, three or more times per week, for 20 minutes or more due to recurring seizure activity (Ex. B1A, p. 7)."

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that, since October 1, 2019, the claimant has had the following medically determinable impairments: epilepsy, subcortical cystic lesion, and anxiety disorder. These are the claimant's current impairments.

5. Since October 1, 2019, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

6. Medical improvement occurred on October 1, 2019 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

7. Since October 1, 2019, the impairment present at the time of the CPD had decreased in medical severity to the point where the claimant has had the following residual functional capacity: The claimant has no exertional limitations and should avoid all exposure to hazards.

8. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii) and 416.994(b)(2)(iv)(B)).

9. Since October 1, 2019, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6) and 416.994(b)(5)(v)).

10. Since October 1, 2019, based on the current impairments, the claimant has had the following residual functional capacity: The claimant has no exertional limitations

and should avoid all exposure to hazards. The claimant can understand, remember, and carry out simple instructions; can maintain concentration, pace, and persistence for two hours at a time during an eight-hour workday for simple instructions; and the claimant can occasionally interact with supervisors, coworkers, and the public.

11. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

12. On October 1, 2019, the claimant was a younger individual age 45-49. The claimant is currently an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

13. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

14. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

15. Since October 1, 2019, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

16. The claimant's disability ended on October 1, 2019, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

(AR 12–22.)

### III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSIONS AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v.*

4

Case 3:25-cv-00347    Document 20    Filed 12/05/25    Page 4 of 14 PageID #: 1456

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirement, he is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, he is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on his RFC, which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), he is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B.     The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) he had not engaged in substantial gainful activity since the alleged onset date, and (2) his impairments of epilepsy and anxiety disorder were severe.[3] (AR 12–13, 16.) However, the ALJ determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 13–14.) At step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but should avoid all exposure to hazards. (AR 16–20.) At step five, the ALJ determined that Plaintiff had no past relevant work, but could perform a significant number of jobs in the national economy. (AR 20–21.) Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from October 1, 2019 through January 2, 2024, the decision date. (AR 22.)

---

[3] The ALJ found that Plaintiff's subcortical cystic lesion was a non-severe impairment. (AR 16.)

## C. Plaintiff's Assertion of Error

Plaintiff requests that this case be remanded back to the SSA for further consideration based on one assertion of error: "The RFC does not account for the moderate limitations in concentration, persistence, and pace, and adapting or managing oneself set forth in the Psychiatric Review Technique finding." (Docket No. 15 at 8.) Accordingly, Plaintiff asks the Court to remand the matter under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

In essence, Plaintiff challenges the ALJ's assessment of his RFC, which is "the most a claimant can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). Courts review an ALJ's RFC determination for substantial evidence. *See Blakley v. Comm'r of Sec. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009). "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

With respect to concentration, persistence, and pace ("CPP") limitations, many courts in the Sixth Circuit have held that there is no "bright-line rule" requiring an ALJ to account for moderate limitations in CPP in any particular way. *See, e.g.*, *Knapp v. Comm'r of Soc. Sec.*, No.

7

19-13326, 2020 WL 7776022, at *5 (E.D. Mich. Nov. 30, 2020); *Ponder v. Comm'r, Soc. Sec. Admin.*, No. 3:17-1152, 2018 WL 3328088, at *4 (M.D. Tenn. July 6, 2018); *Frye v. Astrue*, No. 1:11-cv-1019, 2012 WL 1831548, at *15 (N.D. Ohio Apr. 9, 2012). Instead, the Court must "determine whether – given the unique circumstances of this case – the mental limitations included by the ALJ in the RFC are supported by substantial evidence." *Knapp*, 2020 WL 7776022, at *5 (citations omitted).

Turning to the ALJ's decision, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of either physical or mental impairments that met or medically equaled the severity of one of the listed impairments. (AR 13–14.) When evaluating the severity of *mental* impairments, the SSA has identified four broad functional areas in which the SSA will rate the degree of a claimant's functional limitation: "[1] Understand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). To support the determination at step three, the ALJ considered whether Plaintiff's mental impairment (i.e., anxiety disorder) resulted in one "extreme" or two "marked" limitations in any of those four areas of functioning. The ALJ determined that Plaintiff had only a "moderate" limitation in each area, which is defined as having a "fair" ability to function independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00F.2.c. By contrast, a "marked" limitation is defined as being "seriously limited" in your ability to function independently, appropriately, effectively, and on a sustained basis and an "extreme" limitation is defined as not having an ability to function independently, appropriately, effectively, and on a sustained basis. *Id.* at §§ 12.00F.2.d.–e.

The ALJ then referred to several findings in the record, including that (1) the prior ALJ did not find that Plaintiff had a severe medically determinable impairment; (2) Plaintiff did not report

8

difficulty understanding, remembering, concentrating, following directions, completing tasks, or getting along with people in a Continuing Disability Review Report completed on March 25, 2019; (3) Plaintiff did not receive inpatient mental health treatment; (4) Plaintiff's mental symptoms were well controlled with psychotropic medication; (5) test results did not indicate that Plaintiff had an intellectual or neurocognitive disorder; (6) Plaintiff's mental health examinations did not reveal ongoing clinical findings of a significant mental pathology; and (7) consulting psychological examiners were not able to assess Plaintiff's ability to perform mental work activities due to suboptimal effort. (AR 13–14.) Based on these findings, the ALJ concluded that, although Plaintiff could reasonably be "more than minimally limited" in the four areas of mental functioning, Plaintiff was neither *markedly* nor *extremely* limited in any of the four areas of mental functioning. (AR 14.)

At step four of the decision, the ALJ determined that Plaintiff had the RFC to perform all work with certain non-exertional limitations. (AR 16–20.) In setting the basis for the RFC determination, the ALJ found that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the objective medical and other evidence." (AR 17.) As for Plaintiff's physical impairments, the ALJ stated that his subcortical cystic lesion had remained stable since 2011; his epilepsy had remained under control with medication; and he had not received significant or ongoing medical treatment since October 1, 2019. (AR 17.) Accordingly, the ALJ reduced the RFC to "avoid all exposure to hazards." (AR 18.) As for Plaintiff's mental impairments, the ALJ stated that Plaintiff's anxiety-related symptoms were well controlled with psychotropic medication; there was no diagnostic evidence of a mental disorder; consulting psychological examiners were unable to assess his ability to perform basic

mental work activities because of suboptimal effort; and he did not report difficulty understanding, remembering, concentrating, following directions, completing tasks, or getting along with people in a Continuing Disability Review Report completed on March 25, 2019. (AR 18.) Accordingly, the ALJ included mental limitations in the RFC that were based on Plaintiff's "alleged symptoms and limitations that are reasonably consistent with the objective medical evidence and treatment found in the record." (AR 18.)

The ALJ then considered the "opinion evidence" in the record. For state agency medical examiners, the ALJ gave little weight to the opinion of Dr. Charles Settle and greater weight to the opinion of Dr. Michael Ryan because the latter was "well supported by objective medical findings and better reflect the overall record." (AR 19.) For state agency psychological examiners, the ALJ gave little weight to the opinions of Dr. Brad Williams and Dr. Dorthy Tucker because they "did not adequately consider [Plaintiff's] subjective complaints of anxiety-related symptoms and additional evidence received at the hearing level further suggests the claimant may be more limited than they originally determined." (AR 19.) Finally, for treating physicians, the ALJ gave little weight to the opinion of Dr. James Conley because, among other reasons, he did not treat Plaintiff until after October 1, 2019, the date when Plaintiff's disability was determined to have ended, and he only saw Plaintiff on two occasions, and the ALJ gave little weight to the opinion of Dr. Colleen B. Vandervolk because she provided a "conclusory opinion." (AR 19–20.) The ALJ added that the record did not contain any other opinion evidence from a healthcare professional since October 1, 2019 that addressed Plaintiff's ability to perform work activities, "let alone any suggesting limitations that are more restrictive than those found in their residual functional capacity." (AR 20.)

Finally, the ALJ gave "slight weight" to statements in a letter from Plaintiff's sister dated September 27, 2021 because they were "limited in scope" to the times when Plaintiff experienced a seizure, but they otherwise did not provide insight into Plaintiff's ability to perform basic work activities. (AR 20.)

Based on the evidence of record, the ALJ determined that Plaintiff could perform work at all exertional levels, but should avoid all exposure to hazards; could understand, remember, and carry out simple instructions; could maintain CPP for two hours at time during an eight-hour workday for simple instructions; and could occasionally interact with supervisors, coworkers, and the public. (AR 16.)

Plaintiff now asserts that, when assessing Plaintiff's RFC, the ALJ failed to properly address the moderate limitations in CPP and adapting that the ALJ found when he evaluated the severity of Plaintiff's mental impairments. As the SSA points out in its response, Plaintiff mainly discusses his CPP limitations and not his adaptation limitations. Nevertheless, Plaintiff argues that "*every* limitation" described in step two "must be translated into a detailed assessment and limitation in the RFC finding." (Docket No. 15 at 11.) Plaintiff also contends that the ALJ "did not have a medical opinion finding moderate limitations in [CPP] and . . . indicat[ing] that . . . Plaintiff was still capable of sustained work." (*Id.* at 15.)

Plaintiff argues that, although courts in the Sixth Circuit have held that there is no "bright-line rule" requiring an ALJ to account for moderate limitations in CPP in any particular way, those cases are distinguishable because "a medical professional had made a specific finding that the Plaintiff had moderate difficulties in concentration, persistence, or pace, but could still work on a sustained basis" in those cases. (*Id.* at 14 (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701 (E.D. Mich. Nov. 28, 2011); *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842

11

(E.D. Mich. 2007)).) In other words, Plaintiff appears to argue that when an ALJ, rather than a medical professional, makes a finding of moderate limitations in CPP, an ALJ's limitation to "simple work" in the RFC is inadequate. Accordingly, Plaintiff argues that the RFC was flawed and did not properly account for moderate limitations in CPP. (*Id.* at 14–15.)

Plaintiff then asserts that the ALJ's error is not harmless because the record supports "concrete limitations" in CPP. To support this position, Plaintiff points to medical records indicating that: (1) he has seizures lasting ten minutes; (2) he has complained of fatigue, malaise, and excessive sleeping during the day; (3) he has presented with "underactive motor activity, slumped posture, minimal responses to questioning" and more; and (4) he "would be off task 15% of the workday, could maintain attention and concentration for less than 15 minutes before needing a break, and would be absent more than 4 days a month due to anxiety, seizures, and dizziness" according to his treating provider Dr. Conley. (*Id.* at 15.) Accordingly, Plaintiff argues that his seizures and mental impairments would "reasonably limit" his ability to maintain CPP. (*Id.*)

In response, the SSA argues that Plaintiff has not demonstrated that he was unable to perform work within the ALJ's RFC, which limited him to understanding, remembering, and carrying out simple instructions; maintaining CPP for two hours for simple instructions; and occasionally interacting with coworkers, supervisors, and the public. (Docket No. 18 at 4.) The SSA points to opinions from the Sixth Circuit holding that a moderation limitation in CPP can be sufficiently accommodated by a restriction to simple tasks. (*Id.* (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016); *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020); *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238 (6th Cir. 2016)).) The SSA argues that these opinions confirm that there is no "bright-line rule" and, therefore, render the holdings from the two cases cited by Plaintiff – *Hicks*, 2011 WL 6000701, and *Benton*, 511 F.

12

Supp. 2d 842 – inapplicable. (*Id.* at 5.) The SSA contends that Plaintiff has failed to show why the facts in this case require further limitations to his RFC. Instead, the SSA argues that substantial evidence supports the ALJ's findings. (*Id.* at 6.)

The Court finds that substantial evidence shows that the RFC adequately accounted for all limitations that the ALJ found credible. Notably, the ALJ's RFC limitations are more restrictive than the reviewing state agency psychological consultant's limitations. (AR 683–98.) ALJs must consider the medical findings of state agency medical and psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1) (2022). *See also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) ("State agency medical consultants . . . are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.") Here, in her August 21, 2020 psychiatric review technique opinion, Dr. Tucker opined that, considering Plaintiff's medically determinable impairment of "anxiety disorder," Plaintiff's "degree of limitation" for both CPP and adaptation were "none." (AR 695.) As set forth above, the ALJ gave Dr. Tucker's opinion "little weight" because she did not adequately consider Plaintiff's subjective complaints of anxiety-related symptoms and because additional evidence at the hearing level suggested that Plaintiff was more limited. (AR 19.) However, the ALJ noted that there was "little evidence" that Plaintiff's anxiety caused more than "mild" limitations. (AR 19.) Accordingly, the mental RFC limitations are more restrictive than those found by Dr. Tucker.

Further, Plaintiff has not provided information related to the more restrictive limitations that he believes are appropriate. He has not pointed to any evidence in the record that provides for specific, concrete limitations on his ability to maintain CPP or adapt. Rather, Plaintiff argues that the RFC limitation to simple instructions and to two-hour breaks is inadequate to address a

moderate CPP limitation, even though he has not established that a different CPP limitation is needed. Further, the RFC limitation is not so narrow as to limit CPP to units of time, but rather limits duties generally to "simple routine tasks" with occasional interaction with supervisors, coworkers, and the public. (AR 16.) "[T]he limitation to simple tasks portrays the tasks that [Plaintiff] can perform without being affected by [his] moderate limitations." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436–37 (6th Cir. 2014). Given these considerations, the ALJ properly found that Plaintiff's moderate limitations restricted Plaintiff to simple work with two hour breaks and to occasional interaction with supervisors, coworkers, and the public.

For these reasons, the Court concludes that the ALJ's RFC determination is supported by substantial evidence. The Court therefore rejects Plaintiff's assertion of error.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (Docket No. 14) is **DENIED** and the decision of the Social Security Administration is **AFFIRMED**.

An appropriate Order will accompany this memorandum opinion.

**Signed By:**
***J. Gregory Wehrman***
**United States Magistrate Judge**